PHILLIP A. TALBERT
United States Attorney
AUDREY B. HEMESATH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:19-cr-50 TLN |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: FEBRUARY 10, 2022<br>TIME: 9:30 A.M. |
| KYUNG MIN KONG, | COURT: Hon. TROY L. NUNLEY |
| Defendant. | |

## I. INTRODUCTION

**A.  Scope of Agreement.**

The indictment in this case charges the defendant with violation(s) of 18 U.S.C. §§ 371, 1344, 1956(a)(1)(A)(i), and 1028A(a)(1)(A). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.  Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

PLEA AGREEMENT                                                                 1

concerning the criminal activities of defendant, including activities which may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to count two, bank fraud, in violation of 18 U.S.C. § 1344, count three, money laundering, in violation of 8 U.S.C. § 1956(a)(1)(A), and count four, aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1)(A). The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that his conduct is governed by the Mandatory Restitution Act

pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged from the periods March 15, 2014 through March 20, 2018. The amount of restitution will be between $2.5 million and $3.5 million.

Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court. Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

C. **Fine.**

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense[s].

D. **Special Assessment.**

The defendant agrees to pay a special assessment of $300 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

E. **Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no

PLEA AGREEMENT                    3

longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

F. **Forfeiture.**

The defendant agrees to forfeit to the United States voluntarily and immediately all of his right title and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A). The defendant stipulates and agrees that as part of his sentence the Court may, pursuant to Fed. R. Crim. P. 32.2(b), order a forfeiture money judgment in an amount up to $2,574,161.58.

The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions.

The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

G. **Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within ten weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above, above.

III. **THE GOVERNMENT'S OBLIGATIONS**

A. **Dismissals/Other Charges.**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed

PLEA AGREEMENT 5

count except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Estimated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

### B. Recommendations.

#### 1. Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range, plus the application of the consecutive mandatory statutory 2-year term, as determined by the Court.

#### 2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### C. Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty:

**18 U.S.C. § 1344(1)**

(1) the defendant knowingly executed a scheme to defraud a bank as to a material matter;

(2) the defendant did so with the intent to defraud a bank; and

(3) the bank was a financial institution.

**18 U.S.C. § 1028A(a)(1)**

(1) the defendant knowingly directed another person in the scheme to use without legal authority a means of identification of another person;

(2) the defendant knew that the means of identification belonged to a real person; and

(3) the defendant did so during and in relation to bank fraud.

**18 U.S.C. § 1956(a)(1)(A)(i)**

(1) the defendant conducted a financial transaction involving property that represented the proceeds of bank fraud;

(2) the defendant knew that the property represented the proceeds of bank fraud; and

(3) the defendant acted with the intent to promote the carrying on of bank fraud.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

### V.    MAXIMUM SENTENCE

A.    **Maximum Penalty.**

The maximum sentence that the Court can impose for bank fraud is 30 years of incarceration, a fine of $1,000,000, a 5 year period of supervised release and a special assessment of $100. The maximum sentence that the Court can impose for money laundering is 20 years imprisonment, a fine of $500,000, a 3 year period of supervised release and a special assessment of $100. The mandatory sentence the Court must impose for aggravated identity theft is a consecutive 2 year term of imprisonment; in addition, the Court may impose up to a $250,000 fine, and a one year term of supervised release, and a $100 special assessment.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count(s) to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

B. **Violations of Supervised Release.**

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to an additional three year term of imprisonment.

## VI.   SENTENCING DETERMINATION

A. **Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

B. **Estimated Guideline Calculation.**

The government and the defendant agree that the following is their present best estimate of the sentencing guidelines variables. These estimates shall not be binding on the Court, the Probation Office, or the parties:

1. Base Offense Level: +7 (U.S.S.G. § 2B1.1)

2. Loss Amount: + 18 ($3,698,465.64 intended loss)

3. Victim-related Adjustments: +2 (U.S.S.G. § 2B1.1(b)(2)(A)(i)). Kong was responsibly for opening accounts or busting out accounts used in the scheme at at least 25 different financial institutions.

4. Sophisticated Means: +2 (U.S.S.G. § 2B1.1(b)(10)) Kong used real Republic of Korea passports that were altered for use by various participants in the scheme that Kong transported to dozens of banks, for the purpose of kiting checks and busting out bank accounts. To avoid detection, Kong executed the scheme at banks spread across the United States, moving from location to location, and sending money back to a central organizer.

5.  Means of Identification: +2 (U.S.S.G. §2B1.1(b)(11)). The offense involved Kong's possession and use of five or more means of identification that unlawfully were produced from another means of identification.

6.  Money Laundering: +2 (U.S.S.G. §2S1.1)

7.  Adjusted Offense Level: 33

8.  Acceptance of Responsibility: See paragraph III.B.2 above

Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for an adjustment based on the defendant's post-plea obstruction of justice (§3C1.1). Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).

The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a). The government is not obligated to recommend any specific sentence.

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.   Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea(s), however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum(s) for the offense(s) to which he is pleading guilty. The defendant

understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

C. **Impact of Plea on Defendant's Immigration Status.**

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offense(s) to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

VIII. **ENTIRE PLEA AGREEMENT**

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

IX. **APPROVALS AND SIGNATURES**

A. **Defense Counsel.**

I have read this plea agreement and have discussed it fully with my client. I concur in my

client's decision to plead guilty as set forth in this plea agreement.

Dated:  1-28-2022

_____
TODD LERAS
Attorney for Defendant

B.  **Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated:  1-28-2022

_____
KYUNG MIN KONG
Defendant

C.  **Court Certified Interpreter/Translator:**

I declare that I am a court certified Korean-English interpreter/translator. On 1/28/2022, I read the entire contents of the foregoing plea agreement to Kyung Min Kong, translating the document from English to Korean.

Dated: 2/7/2022   Jacki J. Noh

_____
Interpreter/Translator
Korean Language Court Interpreter
Certification # 300150

D.  **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated:

PHILLIP A. TALBERT
United States Attorney

_____
AUDREY B. HEMESATH
Assistant United States Attorney

PLEA AGREEMENT                              11

EXHIBIT "A"

Factual Basis for Plea(s)

Between on or about March 15, 2014 and March 20, 2018, Kyung Min Kong was a participant in a nationwide bank account "bust out" scheme centered on kiting checks for the purpose of obtaining cash from financial institutions. The scheme generally operated through the use of participants in the scheme obtaining a real Republic of Korea passport that was altered on the identification page to bear a new photograph and name. With the altered Republic of Korea passports, participants opened accounts at financial institutions, using a small amount of cash. The accounts were left dormant to age. Knowing that banks typically allowed a holder of an aged account to deposit a check and make withdrawals against that check before the check actually cleared, participants in the scheme would obtain cash from the bank by using non-sufficient checks drawn on another financial institution. To promote the bank fraud scheme, participants would access the funds in a victim bank account via the purchase of a money order. Participants would then deposit the money order into another bank account associated with the scheme for purposes of freshening the bank account.

As a part of this bank fraud scheme, on or about May 24, 2017, KONG provided to Jeffrey Kim a fraudulent Republic of Korea passport in the name of Person 5 for the purpose of opening (1) a private mail box in Granite Bay, California, in the State and Eastern District of California; and (2) a bank account at the El Dorado Savings Bank in Folsom, California. KONG knew that the Republic of Korea passport contained a picture of Jeffrey Kim, the name of Person 5, and was made for the purpose of opening bank accounts in false names. On or about May 24, 2017, KONG directed Jeffrey Kim to rent a mail box from Granite Bay Postal, in Granite Bay, California, for a three-month term using a fraudulent Republic of Korea passport in the name of Person 5.

The day after renting the mail box, on or about May 25, 2017, KONG directed Jeffrey Kim to open a checking account with $100 at a branch of El Dorado Savings Bank in Folsom, California, in the name of Person 5. KONG directed Jeffrey Kim to use a social security card belonging to Person 5, which KONG had purchased for $600, together with the altered Republic of Korea passport that bore Person 5's name, to open the El Dorado Savings Bank account in Folsom, using the rented Granite Bay mail box address. Out of the El Dorado Savings Bank checking account, approximately 67 checks were presented for payment against the checking account in amounts between $992 and $2,998 for a total of $131,796. All of the checks eventually returned unpaid, as there was only approximately $100 in the checking account to cover the checks.

On or about May 26, 2017, KONG directed Jeffrey Kim to purchase a postal money order in the amount of $995 from a Post Office in Carmichael, California, using a debit card connected to a Wells Fargo account held in the name of another participant in the scheme. KONG knew that the purchase of this money order was an act in furtherance of the bank fraud scheme. On or about May 29, 2017, KONG, knowing that the property represented the proceeds of some form of illegal activity, directed Jeffrey Kim to conduct and attempt to conduct a financial transaction that involved the proceeds of bank fraud, with the intent to promote the carrying on of bank fraud, when a participant in the scheme deposited the $995 money order into a different Wells Fargo Bank account, for the purpose of aging or freshening that bank account and giving it the appearance of a bank account used for legitimate purposes.

KONG is associated with opening source accounts or draining victim accounts at 25 or more different financial institutions. These bust-outs resulted in an actual loss of $2,574,161.58 to the banks, and an intended loss of $3,698,465.64 based on additional, unsuccessful bust-out attempts.

I have reviewed the Factual Basis, above, and, as far as my conduct is concerned, adopt it as true and correct. This Exhibit A – Factual Basis for Plea, has been translated to me in the Korean language

PLEA AGREEMENT                                         A-1

by a certified Korean language interpreter and I have had the opportunity to discuss it with my attorney with the assistance of the interpreter.

Dated: 1-28-2022               _____
                                KYUNG MIN KONG